**SO ORDERED.**

**SIGNED this 11 day of September, 2009.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:                              )
                                    )
ERIC MICHAEL SELF and               )
ROBYN THERESA SELF,                 )          Case No. 06-40228
                                    )
                   Debtors.         )


## MEMORANDUM OPINION AND ORDER REQUIRING AMENDMENTS TO
## SCHEDULES AND ADDITIONAL BRIEFING ON
## TRUSTEE'S MOTION TO MODIFY PLAN PAYMENTS

This matter is before the Court on the Trustee's Motion to Modify the Debtors' Plan.[1]

The Trustee contends that Debtors' income so substantially increased within a few months

of the filing of their Chapter 13 case that an upward adjustment to the monthly plan payments

is required.  Debtors contend that as a matter of law, the Bankruptcy Code does not permit

the Trustee to seek a modification under the facts of this case, and, as a matter of fact, that

_____
[1]Doc. 107.

their net disposable income has not significantly changed because their reasonable and necessary living expenses have increased at the same pace as their income.

The Court has jurisdiction to decide this matter,[2] and it is a core proceeding.[3]

## I.    FINDINGS OF FACT

Debtors filed their case under Chapter 13 of the Bankruptcy Code on April 23, 2006. Their schedules reflected total combined monthly income of $5,310 (or $63,700 annually) and monthly expenses of $4,209. Debtors' income and expenses then increased significantly. When the Trustee received copies of Debtors' 2007 federal and state income tax returns, in April 2008, those returns showed Debtors' total 2007 income of $143,517, an increase of approximately $80,000, representing a 125% increase in income. The evidence presented at trial indicated that Mr. Self obtained new employment, with substantially higher pay, by at least August 2006, only four months after the filing of this case, and only two months after confirmation. No evidence was received indicating the date Mr. Self first learned he would begin employment at that substantially higher salary.

Over seven months after the Trustee received the tax return showing Debtors' precipitous increase in income, on December 4, 2008, the Trustee filed a motion to compel Debtors to turnover $12,503 from their 2007 income tax refund, to file amended Schedules I and J to accurately reflect their current income and expenses, and to file an amended plan

---

[2]28 U.S.C. § 1334.

[3]28 U.S.C. § 157(b)(2)(L).

2

to increase their plan payments. In apparent response to that motion to compel, Debtors filed amended Schedules I and J on January 30, 2009.[4] Amended Schedule I shows Mr. Self's average monthly income had again increased, to $15,600, or $187,200 per year.[5] This represented an annual increase of $123,500 from the original schedules, or almost a trebling of gross income.

Debtors' Amended Schedule J also reflects substantial changes in monthly expenses, even though their family composition had not changed since the filing of the case. Some of those changes include:

1.   Rent/Home Mortgage expense increase from $1,480[6] to $2,800—almost 100%;

2.   Food increase from $550 to $1000—almost 100%;

3.   Clothing increase from $20 to $150—more than seven-fold;

4.   Laundry and dry cleaning increase from $25 to $150—more than seven-fold;;

5.   Medical and dental expenses increase from $167 to $535—more than three-fold;

---

[4]Doc. 104.

[5]The amended Schedule I shows that Mrs. Self was not earning any income at that time, which was consistent with the original Schedule I filed in this case.

[6]When Debtors commenced this case in April 2006, the IRS standard for monthly mortgage or rent expense in Douglas County, Kansas for a family of four or more individuals was $966. Debtors' house payment at that time was $907. Debtors sold their home in the spring/summer of 2007 (*see* Doc. 68), ultimately rented the $2,800 house but also showed $1,480 in rent at one time. Even the $1,480 housing expense was 50% over the median housing expense. The $2,800 is triple the IRS standard in this county.

3

6. Recreation expense increase from $80 to $160 (and later to $228 as reflected on Trustee's Exhibit 26)—almost four-fold;

7. Charitable contributions increase from $10 to $1,400;[7]

8. Health insurance increase from $0 to $578;

9. Hair care and toiletries increase from $25 to $250, or a ten-fold increase;

10. School tuition and expenses increase from $100 to $1,100; and

11. Business-related travel expenses of $1,000 per month (despite the fact Mr. Self admitted at trial that he was reimbursed for all travel expenses by the entity with whom he had contracted).

Debtors also scheduled $100 in home repairs, even though they were renting.

The net result of the dramatic increases in both monthly income and expenses between the date of filing and the filing of the Amended Schedule I and J was that Debtors' net disposable income increased by merely three dollars. In other words, Debtors chose to simply spend their dramatic income increase, rather than paying more to creditors, saving some for retirement, or even paying down part of their $58,3121 student loan[8] that is likely non-dischargeable in light of Debtor's age and apparent ability to earn income.

---

[7]The increase in Debtors' monthly charitable contribution of $1,390 per month is equal to approximately$16,680 each year. Debtors' Schedule F lists total unsecured debt of $81,339.34. Accordingly, had Debtors opted to pay their unsecured debts rather than drastically increase their charitable giving to unprecedented levels for their family, they could have paid 100% of their unsecured debts over 60 months. The same is true if Debtors had opted to remain in the $1,480/month housing instead of going to a house with double that payment.

[8]*See* claim 25-1 by Illinois Student Assistance Commission.

4

Debtors received tax refunds from the 2007 tax year in the amount of $12,503. When the Trustee filed a motion to compel turnover of that refund to the estate, for distribution to unsecured creditors, Debtors responded by filing a motion to retain the tax refunds on the basis that $11,213.32 was spent on medical bills and $1,132.95 was spent on car repairs.[9] The Trustee did not object to the motion to retain the tax refunds, the Court entered an order granting that unopposed request,[10] and the Trustee withdrew his motion to compel turnover of those refunds.[11]

On February 12, 2009, the Trustee filed a Motion for Post Confirmation Amendment of Debtors' Plan pursuant to 11 U.S.C. § 1329.[12] The Trustee contends that many of Debtors' current expenses are unreasonable and unnecessary, and that their net disposable income should thus be much greater. The Trustee also contends that Debtors have exhibited a lack of good faith by failing to timely advise the Trustee and the Court of their substantial increase in income, their failure to increase payments to their creditors despite the increase in income, and their decision to drastically increase their standard of living without Court approval, and at the expense of their unsecured creditors.

---

[9]Doc. 97.

[10]Doc. 102.

[11]Doc. 82.

[12]All future statutory references are to the Bankruptcy Code in effect on the date of filing, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

5

Based upon the increased income, the Trustee asks the Court to order Debtors to make a monthly plan payment of $3,300, instead of $1,100, which would result in significant payments on unsecured claims. Because the increase in income occurred in 2007, and because Debtors did not notify the Trustee of the significant increase in income until they provided a copy of their 2007 tax return (over a year after their income had so precipitously increased), the Trustee also requests that this change be made retroactive to January of 2008.

In response, Debtors contend that the Trustee lacks statutory authority to seek amendment to their plan, and that they did not act in bad faith because their expenses are both accurately stated, and reasonable and necessary. In addition, at trial, Debtors testified that Mr. Self had recently lost his job and was, at the time of trial, unemployed. However, Debtors' forthrightly admitted in their post-trial brief that Mr. Self had been re-employed, but had not yet begun receiving regular paychecks that would enable him to accurately identify his net monthly income. Debtors also stated in their post-trial brief that they had recently moved from the expensive 5,000 square foot, 6 bedroom, 4 bathroom house with a four car garage and separate two car garage they were renting at the time of trial, and had thus greatly reduced their monthly housing expenses.

The Court will discuss additional facts below, when necessary.

II.     **ANALYSIS**

The first issue the Court must decide is whether the Trustee has the statutory authority to seek modification of a plan under § 1329 based upon a change in Debtors' disposable

6

monthly income during the applicable commitment period.  According to Debtors, the statutory bases relied on by the Trustee, §§ 1325 and 1329, do not allow the Trustee to seek a post-confirmation modification in this case, and the motion must therefore be denied.  In support of this position, Debtors make the following arguments:

1.　　A trustee may not request a post-confirmation plan modification based upon a change in disposable income when neither the trustee nor any unsecured creditor objected to the original plan or a modified plan;

2.　　A trustee may not seek a post-confirmation plan modification based on a post-petition change in disposable income because a debtor's "projected disposable income" is determined only once, at the time of confirmation;

3.　　A trustee may not seek a post-petition plan modification based upon a change in disposable income because § 1329 does not incorporate § 1325(b), and any court that allows modification by trustees due to post-confirmation increases in disposable income improperly interprets § 1325 and § 1329; and

4.　　A trustee may not seek post-confirmation plan modification based upon a debtor's bad faith when that alleged bad faith occurred post-petition.

The Court will address these points seriatim.

**A.　A debtor's projected disposable income, for purposes of determining the appropriate plan payment, can be altered post-petition.**

Chapter 13 of the Bankruptcy Code is designed to provide debtors with a fresh start following the completion of a Chapter 13 plan in which Debtors are required to either pay all of their general unsecured debts or pay all of their monthly disposable income to their

7

unsecured creditors for a period of 36 or 60 months.[13]  Disposable income is defined in §

1325(b)(2), as follows:

> [D]isposable income means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended—
>
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>>
>> (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>>
>> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Disposable income is, by its very nature, simply an estimate of the money that will be

available to creditors after a debtor pays all of his or her reasonable monthly expenses,

including rent, utilities, car payments, insurance, etc.  Disposable income is somewhat of a

"best guess" as to what will be available in the future, based upon the current income and

expenses of a debtor, and assumes that future increases in income and expenses will be

minimal.

The Court disagrees with Debtors' contention that "projected disposable income" can

only be determined at the time of confirmation, and is forever set in stone as of that date

regardless what happens to a debtor's income over the life of a 36-60 month Chapter 13 plan.

---

[13]11 U.S.C. § 1325(b)(1).  *See also* 11 U.S.C. § 1325(b)(4) for the statutory requirements concerning whether a debtor's plan must run for 36 or 60 months, also known as the "applicable commitment period."  Debtors were just below median income when they filed the case.

Numerous courts have addressed the preclusive effect of a confirmed plan on the issue of projected disposable income and have held that modifications should only be allowed "in extraordinary circumstances" or where there have been "substantial unanticipated changes" in the amount of disposable income.[14]  This Court need not here determine whether modifications based upon increases in disposable income should occur only under extraordinary circumstance, because even if such a limit were imposed by the Court, this case would most certainly fall within that test.[15]

### B.  Post-confirmation amendments can be made based upon increases in disposable income.

The Court finds, when considering the Bankruptcy Code as a whole, that the Trustee does have the authority to seek modification of Debtors' Chapter 13 plan based upon changes in Debtors' disposable income.  The starting point for any modification of a Chapter 13 plan is § 1329(a).  That statute provides:

---

[14]*See Collier v. Valley Fed. Sav. Bank (In re Collier)*, 198 B.R. 816, 817 (Bankr. N.D. Ala. 1996) (holding receipt of insurance on non-exempt property represented a substantial unexpected change in income); *In re McCray*, 172 B.R. 154, 158 (Bankr. S.D. Ga. 1994) (holding state tax refund was neither extraordinary nor substantial change in debtor's circumstances that would justify disturbing plan); and *In re Wilson*, 157 B.R. 389, 390-92 (Bankr. S.D. Ohio 1993) (divorce court order requiring former spouse to pay portion of debts was neither unanticipated nor substantial, and thus modification sought by Trustee rejected).  *But see In re Riddle*, ___ B.R. ___, 2009 WL 2513533, 2 (Bankr. N.D. Tex. 2009) (citing *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877-78 (5th Cir. 2006)) (noting that in the Fifth Circuit, a change of circumstances is not required to modify a plan under § 1329 based upon a change in disposable income.).

[15]The Court notes that if it were to hold that "projected disposable income" can only be calculated at the time of confirmation, and is thereafter binding upon the parties for the life of the plan, debtors could also never seek a post-confirmation reduction of plan payments based upon a job loss or other reduction in income.  This is a scenario this Court sees frequently.

9

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

> (2) extend or reduce the time for such payments;

> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) . . . .[16]

Section 1329(b)(1) then provides that "Sections 1322(a), 1322(b), and 1323© of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."

The Trustee seeks to modify Debtors' Chapter 13 plan because Mr. Self experienced a significant increase in his income which, had Debtors' expenses remained at or even close to pre-petition levels, would have created additional disposable income that Debtors could use to pay their creditors. The requirement that debtors provide all of their disposable monthly income to fund their Chapter 13 plan is found in § 1325(b)(1), which states:

---

[16]Emphasis added. The Court notes that when Debtors commenced this case, their schedules reflected no health insurance (which likely caused the need to spend their substantial 2007 refund on health care expenses). Their Schedule J now shows a monthly expense of $578 for health insurance. If this was the only increase in Debtors' expenses, this statute would expressly permit this increase in expenses. It is also sound financial planning for a family with three children under 10 to have health insurance, which fact Congress obviously recognized.

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

As noted by Debtors, § 1329 does not specifically incorporate § 1325(b). However, there are other statutory provisions that demonstrate clear Congressional intent to require that debtors pay to their unsecured creditors over the life of their plan all their projected disposable income to be received during the applicable commitment period.

For example, motions to modify under § 1329 can be brought by the Debtor, the Trustee or any unsecured creditor. There are few reasons that an unsecured creditor, or likely even the Trustee, would seek plan modification other than to request an increase in plan payments from disposable income.[17]

In addition, recent amendments to § 521 also demonstrate clear Congressional intent to allow for post-petition amendments based upon changes in disposable income. First, § 521(a)(1)(B)(vi) requires a debtor to disclose any reasonably anticipated increase in income or expenditures over the twelve month period following the filing of the petition. Increases

---

[17]Other possible reasons could include more rare situations such as a debtor inheriting significant property during the pendency of the Chapter 13 case or obtaining some other sort of windfall, such as winning the lottery.

in income over the first year of the Chapter 13 plan could only be relevant in the event the Trustee or an unsecured creditor sought to amend the plan post-petition.[18]  Further, § 521(f)(1) expressly allows the Trustee, or any party in interest, to request and obtain copies of debtors' post-petition tax returns, and § 521(f)(4) requires debtors to provide the Trustee with updated income and expense reports upon request.  If the Trustee lacked the authority to seek a post-confirmation increase in plan payments based upon the information contained in those returns and reports, there would be no purpose for Congress to give the Trustee the right to obtain that information.

It is a fundamental tenant of statutory construction that the "various sections of the bankruptcy code are to be read together."[19]  Therefore, in interpreting § 1329, the Court must be mindful of other sections within the same Code.  When reading § 1329 together with § 1325 and §521, it is clear that Congress intended to allow case trustees to seek modifications of plans post-petition in order to address changes in disposable income.

In addition, another basic principle of statutory interpretation supports this finding.  That tenet is that courts should "give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the

---

[18]That information could not be used to require a debtor to increase his initial plan payments, because requiring a higher initial plan payment based upon an anticipated future increase in income would render a plan unfeasible from the start.  Admittedly, a plan could propose a lower initial payment, with a graduated amount when the anticipated change in income became effective.

[19]*Matter of Nobleman*, 968 F.2d 483 (5th Cir. 1992).

Case 06-40228   Doc# 136   Filed 09/11/09   Page 12 of 25

meaning of the language it employed.."[20]  To read § 1329 in the manner proposed by Debtors would strip any possible effect given to §§ 521(f)(1) and 521(f)(4).  There is no reason to provide this information to the Trustee or any creditor, if it were not used for the purpose of seeking modification of a plan under § 1329.

Reading the statute in the manner sought by Debtors would also essentially render superfluous the specific statutory provision allowing other unsecured creditors to file a motion to modify the plan.  The Court can think of no other reason an unsecured creditor would have the motivation to seek a post-confirmation modification of a plan unless it was to seek an increased plan payment.  Statutes should be construed "so as to avoid rendering superfluous" any statutory language.[21]

The Court also notes that its reading of the statute is consistent with guidance recently provided by the Tenth Circuit Court of Appeals in *In re Lanning*.[22]  *Lanning* involved questions about whether the Court was bound by the projected disposable income of an above median income debtor as determined by Form 22C (the "means test"), or whether the means test merely created a presumption as to what a debtor's projected disposable income would be, subject to modification by showing that the numbers provided on Official Form 22C were no longer accurate.  In addressing this issue, the Tenth Circuit noted:

---

[20]*Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883).

[21]*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

[22]545 F.3d 1269 (10th Cir. 2008).

Finally, we note that the mechanical approach advocated by the Trustee would effectively foreclose bankruptcy protection to debtors like Ms. Lanning, who lack adequate income going into the commitment period to pay the amount of disposable income on Form B22C, while at the same time permitting above-median debtors who have greater income at the time of plan confirmation to pay less to unsecured creditors than they are able to. While the latter situation could be rectified by post-confirmation modification of the plan under 11 U.S.C. § 1329, the former situation cannot be addressed in this manner because the plan would be infeasible and therefore unconfirmable in the first place. A Chapter 13 debtor may modify the plan prior to confirmation under 11 U.S.C. § 1323(a), but any effort by the debtor to deviate from Form B22C "disposable income" through pre-confirmation modification begs the question of whether the forward-looking approach is proper or not.[23]

Although this language is admittedly dicta, and the Tenth Circuit did not specifically rule on the issue currently before the Court, the language used by the Tenth Circuit is more than a little informative on the issue. It clearly shows that the Tenth Circuit is of the opinion that § 1329(a) can be used by a Trustee to modify a Chapter 13 plan when the current payments are not in line with the reality of a debtors' then current disposable monthly income.

Finally, this holding also appears to be directly in line with the legislative history of § 1329. This was addressed in *Washington v. Countryman*[24] when it stated that:

[a]ccording to the legislative history of the statute, "[s]ince plans are confirmed on the basis of future disposable income of the debtor, any subsequent change in the debtor's income, either an increase or a reduction, during the term of the plan will result in an excessive or inadequate commitment of his disposable income under the plan." *Barbosa v. Soloman*, 235 F.3d 31, 40 n. 15 (1st Cir. 2000) (citing testimony during Congressional hearings regarding modification of Chapter 13 plans). "Modification is based on the premise that, during the life of the plan, circumstances may change, and

---

[23]*Id.* at 1281-82 (emphasis added).

[24]390 B.R. 843 (E. D. Tex. 2007).

14

parties should have the ability to modify the plan accordingly." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006).[25]

Accordingly, the Trustee may seek modification under § 1329 under the facts of this case.

**C.   The trustee does not forfeit the right to seek modification of plan based on substantially increased disposable income even if no objection was raised to original or debtor-modified plan.**

Debtors also claim that before a trustee may seek a post-confirmation modification based upon a change in disposable income, the trustee must have objected to either the most current plan, or the original plan. This argument is based upon the statutory language of § 1325(b), which states that subsection applies only upon objection to confirmation by "the trustee or the holder of an allowed unsecured claim." Debtor claims that no part of § 1325(b) applies to the Trustee's proposed amendment because the Trustee is the proponent of this plan and because neither he nor any unsecured creditor objected to the modified plan or to the original plan.

The Court finds that Debtors' proposed reading of § 1325(b), in the context of a trustee's § 1329 motion, would lead to an absurd result.[26] Debtors' original plan proposed to provide all of their then-projected disposable income toward the payment of their

---

[25]*Id.* at 846.

[26]The United States Supreme Court has made it clear that a disposition under a particular statute should not lead to an absurd result. *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000).

15

unsecured creditors. There was clearly no basis for an objection by the Trustee to that plan,[27] and a protective objection to confirmation on the basis that Debtors' income "might" increase, or their expenses "might" decrease over the applicable commitment period—merely to preserve the ability to later file a § 1329 modification if the statutorily required income and expense information later shows such facts, would not have been favorably viewed by this Court, and should not be required.

The same holds true for the Trustee filing an objection to his own proposed amended plan. Debtors contend that the Trustee, or a general unsecured creditor, must object to either the original plan, or the proposed amended plan, before § 1325(b) comes into play. The Court has already held that requiring a party to object to a plan that provides for all of Debtors' disposable income to be paid into the plan just for the sake of making a protective objection is not only not required, but would be absurd. It would create an administrative burden on the Court and the Trustee not justified by any policy.

The Court also finds that allowing modification of a Chapter 13 plan based upon a substantial increase in disposable income is only equitable. There is no question that debtors have the ability to come before the Court to seek a reduction in their Chapter 13 plan

---

[27]Admittedly, this statement begs the question whether Debtors knew at the time of confirmation that Mr. Self was about to double the family's income. Both Schedule I forms they have filed in this case clearly required them, in paragraph 17, to "[d]escribe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document." In both instances, they responded "None." *See* Docs. 1 and 104.

16

payments in the event their disposable income decreases,[28] and the same opportunity must be present for the Trustee and creditors of the estate if disposable income substantially increases.

In addition, the Court notes that the basic purpose of a Chapter 13 proceeding is to have debtors pay what they can afford to pay[29] over a three to five year period, after which they are granted a fresh start and will hopefully move on with their lives without the prior financial burdens. There are distinct advantages in filing a Chapter 13 proceeding over a Chapter 7 proceeding, such as obtaining a broader discharge of debts, the ability to cure arrearages on secured debt, the ability to retain non-exempt property by paying the liquidation value over the life of the plan, and effectively the ability to defer repayment of student loans. Again, Congress has elected to grant these benefits to Chapter 13 debtors, but only if they agree to pay what they can afford to pay to their creditors.

Turning to the specific facts of this case, the Court is extremely troubled to see these Debtors take advantage of the significant benefits of a Chapter 13 proceeding, but then opt to significantly increase their expenses and attendant standard of living to soak up all increases in income rather than increase what they pay to their creditors. When these Debtors

---

[28]*See In re Ireland*, 366 B.R. 27 (Bankr. W.D. Ark. 2007) (holding that BAPCPA does not prevent debtors from modifying their Chapter 13 plan due to an unexpected decrease in disposable income); 4 COLLIER ON BANKRUPTCY ¶ 1329.02 (15th ed. rev. 2007).

[29]*See In re Kibbe*, 361 B.R. 302, 314 (1st Cir. BAP 2007) (citing H.R. Rep. No. 109-31, pt. 1, at 2 (2005) in support of the fact that the heart of the changes to the bankruptcy reforms by BAPCPA was the means test "which is intended to ensure that debtors repay creditors the maximum they can afford.")

17

filed this case in 2006, the IRS standard for mortgage or rent expense in Douglas County, Kansas for a family of four or more individuals was $966 per month, and their house payment at that time was $907. There was no evidence presented at trial that the home in Eudora was either too small for their family, or that it was inadequate to meet their family needs. Suddenly, when their income almost tripled, they acquired the "need" to move to rental housing at a cost that was more than triple their prior mortgage payment, and almost triple the IRS standards.

In addition, Mr. Self admitted they did not choose to look very hard for lesser cost housing when they elected to sign the lease for 5000 square foot rental home. In addition, they suddenly "needed," or found it reasonable, to increase 100-fold their contributions to charity over pre-petition levels, and elected to use a private school instead of the free public schools available to them. Modest increases in expenses is normal over the life of many Chapter 13 cases, but the extent to which these Debtors elected to absorb huge increases in income with expenses so much higher than pre-petition levels is both disturbing and demonstrative why it is necessary to interpret the Code in a manner that allows for the amendment of a Chapter 13 plan by the Trustee or an unsecured creditor under these facts.

As above noted, this Court finds that a significant increase in a debtor's disposable income is a valid basis for a trustee, or a holder of an allowed unsecured claim, to seek modification of a confirmed plan. Although an objection by the trustee or unsecured creditor may be required to invoke the requirements of § 1325(b) when a plan is proposed by a

18

debtor, requiring some sort of protective objection by the trustee to his own proposed plan (or objecting to an original plan on the basis that a debtor's income might increase) is clearly an absurd reading of the Bankruptcy Code.

In essence, by filing the motion to amend the plan, the trustee is objecting to allowing a debtor to continue with an original Chapter 13 plan that may once have been fair to unsecured creditors, but which is no longer fair. Allowing the trustee to use the provisions that § 1329 clearly allows—to seek an increase in the plan payments—is the only manner that is fair, reasonable and functional under the Code. The Court finds that the Trustee's failure to object to the original plan (that was not objectionable) and failure to object to his own proposed amended plan (which would of course be absurd) does not deprive the Trustee of the opportunity to seek to amend Debtors' Chapter 13 plan based upon their significant increase in disposable income.

### D. Debtors' good faith is not at issue in regard to the motion to modify plan payments.

The Trustee has also moved for Debtors' plan to be modified based upon an allegation that Debtors have acted in bad faith, or at least with a lack of good faith, in failing to file their own § 1329 modification to increase payments to creditors. Section 1325(a)(3) requires that the Court find that a "plan has been proposed in good faith" before it can be confirmed. Section 1325(a) does not limit its application to only a debtor's "original" plan, and it is specifically incorporated into § 1329. Therefore, there is no doubt that good faith applies in situations where a party seeks to modify a plan.

19

However, the Court finds that the Debtors' good faith, or lack thereof, is not at issue in this case at this time. Section 1325(a)(3) clearly states that the plan must be "proposed in good faith." Debtors proposed the original plan in this case, and there is no allegation that it was not proposed in good faith. In addition, there is no general statutory requirement that the plan continue to be a good faith effort by the Debtors, or that they owe some ongoing duty of good faith to file any sort of amendments to their plan, although perhaps there should be. Because Debtors are not proposing the current plan, and because the plan they originally proposed has been confirmed and is no longer subject to scrutiny under § 1325(a)(3), the Court finds any lack of good faith by the Debtors is not pertinent to whether the Trustee should be allowed to pursue a § 1329 modification.

### E. The Trustee's request for retroactive modification of Debtors' plan cannot be granted.

The Court has found that the Chapter 13 Trustee has the authority to seek amendment to Debtors' Chapter 13 plan based upon their significant increase in disposable income. However, the Court finds that it cannot grant the Trustee's request that this amendment be applied retroactively to January 2008. The Trustee's request is based upon the fact that Debtors' income had increased significantly by January 2008,[30] and that Debtors should have come forward with their own amendment, and should have been making larger plan payments from that point forward instead of dramatically increasing their standard of living to absorb the entire increase.

---

[30]The facts actually demonstrate the income had substantially increased by August 2006.

20

Although the Court is sympathetic with the Trustee's position, the Court finds any change in plan payments should not here be retroactive. First and foremost, the evidence presented at trial (as supplemented by admissions contained in Debtors' post-trial briefs) indicates that between the time the motion to amend was filed and the date of trial, Debtor became unemployed. Then between trial and the filing of the post-trial briefs, Debtor apparently was re-employed, but Debtors could not yet accurately predict what their family income would be from the new job. In addition, Debtors moved from their very expensive rental home to another home with a rent of approximately $1,300 less per month (but still significantly in excess of the IRS standards).

Although Debtors indicated in a brief filed several weeks ago that they would be filing amended Schedules I and J to accurately reflect their current income and expenses, they have not yet done so. Accordingly, neither the Court nor the Trustee know what Debtors' current monthly disposable income is, nor do they know what Debtors' current <u>reasonable</u> monthly expenses are. It is thus impossible to determine what amount Debtors can now afford to pay into their Chapter 13 plan going forward. Were the Court to grant the Trustee's request, and Debtors' disposable income is then determined to be less than $3,300 per month, the plan would be immediately unfeasible and the requested modification could not be allowed.

In addition, and perhaps most importantly, the Court notes that nothing in the Bankruptcy Code <u>requires</u> debtors to amend their plans in the event they experience an increase in disposable income. Were the Court to grant the Trustee's motion for retroactive

Case 06-40228    Doc# 136    Filed 09/11/09    Page 21 of 25

relief, it would require Debtors to essentially repay nearly two years of increased plan payments. Although not framed this way in the Trustee's request, granting the requested relief would result in essentially granting a judgment to the Trustee for Debtors' failure to voluntarily amend their plan when they were not statutorily required to do so. Finally, the evidence received at trial shows that these Debtors chose to spend all extra money—rather than saving for the inevitable rainy day of unemployment (which they then did experience) or car problems (which they also experienced and used as a basis for retaining a huge refund), or health issues (which they also experienced and used as a basis to retain the refund), so a decision requiring them to repay the money at this point would result in the immediate lack of feasibility of the plan, and its attendant dismissal.

Further, as outlined above, the Bankruptcy Code contains specific provisions that are aimed at providing the Trustee and unsecured creditors with the tools necessary to timely discover an increase in disposable income.[31] Congress also elected to place the burden of discovering increased income, and then seeking plan modification, on the Trustee and creditors, because it did not require debtors to amend their plans to account for increased incomes.[32] Concomitantly, if a debtor incurred a significant decrease in income, but

---

[31]*See* § 541(f)(1) and (4).

[32]The Court finds it important to note, parenthetically, that the facts of this case are clearly the exception, not the rule. The vast majority of Chapter 13 debtors this judge sees do not experience salary windfalls, and when they experience more modest increases, their otherwise meager budgets frankly deserve equivalent increases. In other words, if a family of four is managing to survive on a $300 monthly food budget and the family then receives a $100/monthly increase in income, the Court would not expect them to turn that money over to creditors. But

22

somehow was able to, and did, continue making the original plan payments at the higher amount for several months, that debtor would not be entitled to seek a refund from the trustee by showing that the debtor actually had less disposable income than the original plan showed.

The Court does recognize that the Trustee does not have immediate access to Debtors' financial records, but Congress has determined the frequency with which that information must be turned over to the Trustee and the Court must follow Congress' decision. In light of this decision, the Court assumes the Trustee will likely opt to be more aggressive in obtaining this information in a prompt manner from debtors, and the Court will help facilitate the timely receipt of that information from debtors, including dismissal of a case if the information is not timely provided.

III.    CONCLUSION

How these Debtors have opted to live their lives during the pendency of this case is reflective of how some debtors end up in Bankruptcy Court to begin with. Oftentimes, individuals are living at or near their financial limits, meaning they are unable to, or choose not to (as in this case), save money for unexpected expenses or a loss of income, which then precipitates a bankruptcy filing. These same debtors then oftentimes elect to absorb any increase in income with additional expenses that may be neither reasonable nor necessary. In this case, when Mr. Self's income dramatically increased, Debtors elected to simply

---

when debtors such as these already have an adequate food budget, and then elect to double it (and almost every other expense by even more than double), the Court loses its sympathy for their financial plight.

23

increase their standard of living by an equal amount, rather than pay off their creditors, or attempt to save at least something for retirement or to reduce their substantial student loans that are not part of this Chapter 13 bankruptcy.[33]

The Court finds that the Chapter 13 Trustee does have the authority to seek modification of a Chapter 13 plan based upon an increase in Debtors' disposable income. However, the Court also finds that any such modification can only be made prospectively, and based upon Debtors' current monthly disposable income. Unfortunately, the evidence presented at trial (that Debtor was at that point unemployed and that Debtors were then living in the expensive rental home) and the arguments made in the post-trial briefs clearly show that the income and expenses that formed the basis for the Trustee's objections are no longer accurate.

Debtors indicated in their post-trial brief[34] that they intend to file amended Schedules I & J that accurately reflect their current monthly income and expense. The Court orders Debtors to file those amended schedules within 14 days. The Trustee will then have 14 days to review the amended schedules and to decide if he intends to proceed with his motion to modify the plan payments. If the Trustee believes the plan should be modified based on that current income and expense information, he can file a supplemental brief identifying what

---

[33]This conduct shows that the counseling Congress now requires debtors to obtain prior to filing bankruptcy, and which these Debtors did obtain, did not serve to deter at least these Debtors from making poor financial decisions during their Chapter 13 case. *See* 11 U.S.C. § 111 and 109(h).

[34]Doc. 127.

Case 06-40228    Doc# 136    Filed 09/11/09    Page 24 of 25

he believes the plan payments should be based upon Debtors' current income and expenses. He may also at that time make any argument that Debtors' expenses listed on the amended Schedule J are not reasonable and necessary.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Debtors are to file amended Schedules I and J within 14 days.

**IT IS FURTHER ORDERED** that the Chapter 13 Trustee shall have 14 days from receipt of the Amended Schedules I and J to file a pleading indicating his position based on the evidence presented at trial that is still relevant (e.g., if Debtors are still sending a child to private schools when there was no evidence that the public schools would be inadequate, or continue to make charitable contributions over one hundred times higher than pre-petition levels, or continue to double their housing and food expenditures, increase their personal care expense ten-fold, increase clothing and laundry expenses six to seven-fold, triple recreation, etc.), including whether he intends to continue pursuit of modified plan payments at the same level. If he does intend to proceed, he shall indicate what he contends the proposed plan payments should be based upon Debtors' current monthly income and expenses. Debtors can then reply within 7 days, at which time the Court will take the matter under advisement. If either party contends additional trial testimony or evidence is needed, immediate contact should be made with chambers for further scheduling.

###

Case 06-40228   Doc# 136   Filed 09/11/09   Page 25 of 25